IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALDER RUN LAND, LP; ORRIN L. FRENCH, *as trustee of the Schoonover Real Estate*; JEFFREY A. DALKE, *as trustee of the Schoonover Real Estate Trust*; CATHERINE G. ANDERSON, *as trustee of the Catherine G. Anderson Trust*; DAVID K. DAHLGREN and MARJORIE DAHLGREN, *husband and wife*; BONNIE LOU DAHLGREN PETERS and TERRY PETERS, *wife and husband*, <br><br>  Plaintiffs, <br><br> v. <br><br> NORTHEAST NATURAL ENERGY LLC, <br><br> Defendant. | CIVIL ACTION NO. 3:13-222 <br><br> JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

**I.  Introduction**

Plaintiffs bring this action against Defendant Northeast Natural Energy, LLC ("Northeast"), alleging that Northeast has refused to honor its agreement to enter into certain oil and gas leases. Northeast has filed a motion to dismiss or, in the alternative, to compel arbitration (ECF No. 10). For the reasons that follow, the motion will be granted to the extent the Court will direct the parties to arbitrate Plaintiffs' claim.

**II.  Jurisdiction and Venue**

The Court exercises diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and the suit is

between citizens of different states.[1] Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

III. **Background**

Plaintiffs own oil and gas interests in Clearfield County and Centre County, Pennsylvania. (Compl. ¶ 11). On May 4, 2010, Plaintiffs and East Resources, Inc. executed three separate but essentially identical leases (the "2010 Leases") in which East Resources obtained the right to produce oil and gas from approximately 1,800 acres of Plaintiffs' property. (*Id*. ¶¶ 12–14). Each lease contained an addendum stating, in material part:

> 21. <u>GOVERNING LAW AND ARBITRATION</u>: The laws and regulations of the Commonwealth of Pennsylvania shall govern the performance of both parties under this oil and gas lease . . .
>
> Any issue, item or disagreement between Lessor and Lessee concerning this lease or performance there under shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and third by the two so appointed as aforesaid in and the award of such collective group shall be final and conclusive. . . .

(ECF No. 1-2 at 28; ECF No. 1-3 at 24; ECF No. 1-4 at 32).

SWEPI, L.P. acquired East Resources, Inc., thus becoming the successor lessee under the 2010 Leases. (Compl. ¶ 15). In 2011, Defendant Northeast sought to acquire oil and gas leases from SWEPI, including an assignment of the 2010 Leases. (*Id*. ¶ 16). Before acquiring the 2010 Leases, however, Northeast insisted on certain modifications to those

---

[1] The issue is whether the parties agreed to arbitrate their dispute. The Court has jurisdiction to determine the issue of arbitrability because there has been no delegation of that authority to an arbitrator under any of the contracts at issue. *See* 9 U.S.C. § 4; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995) (absent "clear and unmistakable" evidence that the parties agreed to "arbitrate arbitrability," the court retains jurisdiction over the issue of arbitrability).

2

agreements. To encourage Plaintiffs to amend the 2010 Leases, Northeast and Plaintiffs executed three separate but nearly identical letter agreements (the "Letter Agreements").

The Letter Agreements, each dated April 28, 2011, define the 2010 Leases as the "Underlying Lease." (ECF No. 1-5 at 1; ECF No. 1-6 at 1; ECF No. 1-7 at 1). Each Letter Agreement also states:

> Should Northeast acquire an Assignment of . . . the Underlying Lease, then the parties hereto specifically agree that the Underlying Lease shall be subject to the following conditions:
>
> * * *
>
> 3. For a period of eighteen (18) months from the date Northeast acquires the East Resources Leases, Northeast agrees to lease from the Lessor any additional oil and gas fee interests that may be acquired or identified and available to be leased by the Lessor and that are part of or contiguous to lands covered by the East Resources Leases . . . upon the same terms and conditions as set forth in the Underlying Lease, with the exception that the delay rental for the primary lease term of five (5) years will be a one-time payment of $2,000 per acre.

(ECF No. 1-5 at 2–3; ECF No. 1-6 at 2–3; ECF No. 1-7 at 2–3).

On May 4, 2011, Plaintiffs and SWEPI amended the 2010 Leases, and SWEPI later assigned the leases to Northeast. (Compl. ¶ 19). In April 2012, Northeast surrendered the 2010 Leases in accordance with paragraph 11 of those agreements.[2]

According to Plaintiffs, the surrender of the 2010 Leases did not affect the parties' continued rights and obligations under the Letter Agreements. In November 2012, Plaintiffs tendered more than 2,200 acres of oil and gas interests in accordance with

---

[2] Paragraph 11 of the 2010 Leases states, in part: "Lessee at any time . . . may surrender this lease as to all or any part thereof by recording an appropriate instrument of surrender in the proper county and thereupon this lease and the rights, rentals and obligations of the parties hereunder shall terminate as to the part so surrendered. . ." (*See, e.g.*, ECF No. 1-2 at 11 ¶ 11).

3

paragraph 3 of the Letter Agreements.  Plaintiffs filed this suit on September 25, 2013, alleging that Northeast breached the Letter Agreements by refusing to enter into oil and gas leases for those 2,200 acres of property.  Northeast now moves to dismiss this action or, in the alternative, to compel arbitration.

## IV. Standard of Review[3]

In determining a motion to compel arbitration, a district court must apply either a motion to dismiss or a motion for summary judgment standard.  "When it appears from the face of a complaint, and documents relied upon in the complaint, that certain of its claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011).  By contrast, a court should apply a summary judgment standard when

> either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate . . . or the opposing party has come forth with reliable evidence . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013) (internal citations and quotations omitted).

This breach of contract dispute involves provisions in the 2010 Leases and in the Letter Agreements.  All of the pertinent documents are attached to the complaint, and

---

[3] Northeast moves to dismiss this case for lack of subject matter jurisdiction and improper venue. Given that the issue is whether the parties agreed to arbitrate, it is more appropriate to treat this motion solely as one to compel arbitration.  As stated above, the Court exercises diversity jurisdiction over the issue of arbitrability, and venue is proper in this district.

4

Plaintiffs have not requested any additional time for discovery before the Court rules on the instant motion. Accordingly, Northeast's motion to compel arbitration is properly evaluated under a Rule 12(b)(6) standard, without the need for further discovery.

Given that the applicable standard is one to dismiss for failure to state a claim, the test is "whether, under any reasonable reading of the pleadings, [the] plaintiff may be entitled to relief." *Kundratic v. Thomas*, 407 F. App'x 625, 627 (3d Cir. 2011). The court must accept as true the well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Nevertheless, the factual allegations must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the plaintiff must show that a claim is "plausible on its face." *Id.* at 570.

**VI.    Discussion**

The parties dispute whether this case is subject to mandatory arbitration. They nonetheless agree that the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. §§ 1–16, applies in this case. (ECF No. 11 at 5; ECF No. 34 at 6). The FAA provides a framework for implementing private arbitration agreements and applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. In essence, the FAA requires federal courts to "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, a question of arbitrability invokes two issues: first, "whether the parties have a valid arbitration agreement," and second, "whether a concededly binding arbitration clause applies to a certain type of controversy." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). Accordingly, a motion to compel arbitration "calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). The Court discusses both issues in turn.

### A. The existence of a valid arbitration agreement

In opposing the motion to compel arbitration, Plaintiffs argue that the Letter Agreements are entirely separate from the 2010 Leases and that the Letter Agreements do not contain an arbitration clause. (ECF No. 34 at 4–5). Thus, in Plaintiffs' view, the parties never agreed to arbitrate any disputes arising under the Letter Agreements. Northeast disagrees with Plaintiffs' interpretation, arguing that the Letter Agreements modified the 2010 Leases once Northeast acquired the leases from SWEPI, L.P. (ECF No. 11 at 7).

In determining whether the parties have a valid agreement to arbitrate, a federal court sitting in diversity must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate."). Here, because the Letter Agreements call for the

6

application of Pennsylvania law, the Court uses Pennsylvania law to determine whether the parties have entered a valid agreement to arbitrate.

### 1. General principles of contract interpretation

Under Pennsylvania law, "[t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). "If the language of the contract is unambiguous and susceptible of only one interpretation, a court will determine the parties' intention on the basis of the clear wording of the contract." *O'Farrell v. Steel City Piping Co.*, 403 A.2d 1319, 1324 (1978). Courts should consider the contract as a whole and give effect to each of its provisions. *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (Pa. Super. Ct. 2007). Furthermore, a "preferred contract interpretation" ascribes "the most reasonable, probable, and natural conduct to the parties." *Id.* at 1113.

### 2. Interpreting the Letter Agreements

Applying the aforementioned principles of contract interpretation, the Court finds that Plaintiffs have failed to allege sufficient facts showing that the Letter Agreements are not subject to a valid and enforceable arbitration clause. The Letter Agreements define the 2010 Leases as the "Underlying Lease." The Letter Agreements then state, "Should Northeast acquire . . . the Underlying Lease, then the parties hereto specifically agree that *the Underlying Lease shall be subject to the following conditions . . .*" (ECF No. 1-5 at 2; ECF No. 1-6 at 2; ECF No. 1-7 at 2) (emphasis added). The only reasonable interpretation of

this language is that, once Northeast acquired the 2010 leases, the provisions of the Letter Agreements modified those leases.

In arguing that the Letter Agreements did not become part of the 2010 Leases, Plaintiffs rely on the fact that the 2010 Leases and the Letter Agreements were executed at different times. Plaintiffs further rely on the fact that the Letter Agreements include an integration clause. (*See, e.g.*, ECF No. 1-5 at 3 ¶ 4) ("This Agreement constitutes the entire contract between the parties . . ."). These arguments are unpersuasive. "Where several instruments are made as part of one transaction they will be read together . . . and this is so although the instruments may have been executed at different times . . ." *Neville v. Scott*, 127 A.2d 755, 757 (Pa. Super. Ct. 1956). Moreover, the integration clause cannot support Plaintiffs' argument because the Letter Agreements omit essential elements of the parties' overall agreement.[4] Specifically, paragraph 3 of the Letter Agreements states that Northeast agreed to acquire leases under the "same terms and conditions as set forth in the Underlying Lease." Without reference to the 2010 Leases, the Letter Agreements are incomplete and essentially meaningless.

Finally, Plaintiffs cite an earlier draft of Letter Agreements to support their view that the parties did not intend to incorporate the Letter Agreements into the 2010 Leases. (ECF No. 35-1). Because the Letter Agreements are clear and unambiguous, any earlier

---

[4] The Pennsylvania Superior Court in *Neville* disregarded an integration clause under similar circumstances. The *Neville* Court found that an integration clause was "not controlling" when the agreement did not "fully express the essential elements of the parties' undertaking." 127 A.2d at 757.

versions of those documents are irrelevant. In this context, the integration clause in the Letter Agreements is noteworthy:

> The effect of an integration clause is to make the parol evidence rule particularly applicable. Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract.

*Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005) (quoting *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Properties, Inc.*, 653 A.2d 663, 665 (Pa. Super. Ct. 1995)). Thus, Plaintiffs cannot use earlier drafts of the Letter Agreements to explain or alter its final terms. The Letter Agreements are subject to an arbitration clause, and the only issue remaining is whether this dispute falls within the scope of that arbitration provision.

### B. The scope of the arbitration agreement

In determining whether a claim falls within the scope of an arbitration clause, the court must focus on "the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (internal quotation and citations omitted). In this regard, the court is guided by a "presumption of arbitrability." *Id.* (citations omitted); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (emphasis added).

In this case, Plaintiffs do not argue that their claim falls outside the scope of the applicable arbitration agreement. (*See* ECF No. 34 at 2).[5] The clause states that

> [a]ny issue, item or disagreement between Lessor and Lessee concerning this lease or performance there under shall be ascertained and determined by three disinterested arbitrators . . .

(ECF No. 1-2 at 28; ECF No. 1-3 at 24; ECF No. 1-4 at 32). This clause covers any issue or disagreement "concerning" the 2010 Leases—without any limitations on the nature of disputes covered by arbitration. It is thus reasonable to conclude that the parties intended the scope of the arbitration clause to be unlimited. *See Borough of Ambridge Water Auth. v. Columbia*, 328 A.2d 498, 501–02 (Pa. 1974) (finding the scope of a similar arbitration clause as unlimited). Because the subject matter of Plaintiffs' claim is an issue or disagreement concerning the 2010 Leases, this case must be resolved through arbitration.

## VI. Conclusion

Plaintiffs have failed to allege sufficient facts showing that this case falls outside the scope of an enforceable agreement to arbitrate. The Court will therefore dismiss this case and order the parties to arbitration. *See Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998) (finding that, under the FAA, "[i]f all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it.") (citations omitted); *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 364 (E.D. Pa. 2003) (same).

An appropriate order follows.

---

[5] In their amended brief in opposition to the motion to compel arbitration, Plaintiffs argue that the Letter Agreements do not contain an agreement to arbitrate. (*See* ECF No. 34). But Plaintiffs do not make any arguments as to whether their claim fits within the scope of the arbitration clause in the 2010 Leases.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ALDER RUN LAND, LP, et al., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. 3:13-222 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| NORTHEAST NATURAL ENERGY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

NOW, this **30th** day of April 2014, IT IS HEREBY ORDERED that Defendant's motion to dismiss for lack of subject matter jurisdiction and improper venue or, in the alternative, to compel arbitration (ECF No. 10) is GRANTED IN PART and DENIED IN PART. The motion to dismiss for lack of subject matter jurisdiction and improper venue is DENIED. The motion to compel arbitration is GRANTED as follows:

1. Plaintiffs' complaint (ECF No. 1) is DISMISSED in its entirety because the sole claim against Defendant (Count 1) must be arbitrated; and

2. The parties are ordered to proceed to arbitration in accordance with the terms of the arbitration clause found in the 2010 Leases.

IT IS FURTHER ORDERED that the Clerk of Court shall mark this case closed for statistical purposes.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE